**ATLAS ROOFING COMPANY, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 73–2249.

United States Court of Appeals, Fifth Circuit.

September 8, 1975.

**992**

McNeill Stokes, Ira J. Smotherman, Jr., Atlanta, Ga., for petitioner.

William J. Kilberg, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., William McLaughlin, Executive Secretary, Occup. Safety & Health, Stephen F. Eilperin, Walter H. Fleischer, Michael Kimmel, Dept. of Justice, Washington, D. C., for respondent.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Atlas Roofing Company petitions this Court to review an order of the Occupational Safety and Health Review Commission (OSHRECOM)[1] affirming a $600.00 penalty assessed by the Secretary of Labor under the Occupational Safety and Health Act of 1970 (OSHA).[2] Specifically Atlas was cited for violation of 29 C.F.R. 1926.500(f)(5)(ii) for failing to adequately cover roof openings that resulted in the death of one of its employees. Petitioner challenges the order not only on the issue of substantive compliance with the regulation, but also on the grounds that the basic structure of OSHA is constitutionally defective because (1) the civil penalties under OSHA are really penal in nature and call for the constitutional protections of the Sixth Amendment and Article III (2) even if found to be a civil penalty, OSHA violates the Seventh Amendment because of the absence of a jury trial, and (3) this is a denial of the Fifth Amendment right to a "prejudgment" due process hearing, since under OSHRECOM orders are self-executing unless the employer affirmatively seeks review. While we recognize the importance as well as the novelty in some cases of Atlas' arguments, we disagree with these contentions and affirm.

## I. In The Beginning

At 9 a. m. on June 6, 1972 Johnny Boseman, a temporary employee of Atlas Roofing Company, was fatally injured when he fell through a 3' x 3' ventilation bay set in the roof of an unfinished warehouse to the concrete floor 30 feet below. Boseman's death initiated an inspection by the Department of Labor and as a result, Atlas, his employer and the subcontractor for the project, was cited for a "serious" violation[3] of OSHA

---

1. As this is obviously going to be a fruitful source of Court of Appeals litigation, acronyms will be a handy tool. But they are better if they are readily pronounceable. So we have added to the initials the suffix ECOM to read OSHRECOM.

2. 29 U.S.C.A. § 651 et seq.

3. **§ 659. Enforcement procedures—Notification of employer of proposed assessment of penalty subsequent to issuance of citation; time for notification of Secretary by employer of contest by employer of citation or proposed assessment; citation and proposed assessment as final order upon failure of employer to notify of contest and failure of employees to file notice**

 (a) If, after an inspection or investigation, the Secretary issues a citation under section 658(a) of this title, he shall, within a reasonable time after the termination of such inspection or investigation, notify the employer by certified mail of the penalty, if any, proposed to be assessed under section 666 of this title and that the employer has fifteen working days within which to notify the Secretary that he wishes to contest the citation or proposed assessment of penalty. If, within fifteen working days from the receipt of the notice issued by the Secretary the employer fails to notify the Secretary that he intends to contest the citation or proposed assessment of penalty, and no notice is filed by any employee or representative of employees under subsection (c) of this section within such time, the citation and the assessment, as proposed, shall be deemed a final order of the Commission and not subject to review by any court or agency.

 **§ 666. Civil and criminal penalties**

 (b) Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $1,000 for each such violation.

for failing to maintain an adequate cover or railing around the exposed roof bay.[4] Atlas was directed to correct the violation immediately and pay a $600.00 penalty. In response, Atlas chose to contest the citation and proposed penalty by way of the statutory review procedure.[5]

In the hearing before the Review Commission Administrative Law Judge (ALJ), Atlas denied that it had violated the regulations and raised as additional defenses the contentions that the enforcement procedures of OSHA were unconstitutional.[6]

Limiting his decision to Atlas' factual arguments only, the ALJ concluded that the applicable regulation required employers to provide guardrails around roof openings and, absent those, a cover that was "so installed as to prevent accidental displacement."[7] In view of this requirement, the ALJ concluded that Atlas had failed to show that the insulation material—of the same nature that was being used for the roof covering—met the requirements of the applicable standard. The proposed $600.00 penalty was adjudged to be an appropriate and reasonable one.

Subsequently, Atlas filed a petition to seek discretionary review by OSHRECOM itself.[8] Because no member of the Commission requested that the decision of the ALJ be reviewed, this decision became the final order of the Commission 30 days later on May 7, 1973. Thereafter Atlas petitioned for review of this order in the Court of Appeals and moved for and was granted a stay of the penalty by the Commission.[9]

---

**4.** The safety standard said to be violated was 29 C.F.R. 1926.500 that read:

(b) *Guarding of floor openings and floor holes.* (1) Floor openings shall be guarded by a standard railing and toe boards or cover, as specified in paragraph (f) of this section. In general, the railing shall be provided on all exposed sides, except at entrances to stairways.

and (F)

(5) Floor opening covers shall be of any material that meets the following strength requirements:

(i) Conduits, trenches, and manhole covers and their supports, when located in roadways, and vehicular aisles, shall be designed to carry a truck rear-axle load of at least 2 times the maximum intended load;

(ii) The floor opening cover shall be capable of supporting the maximum intended load and so installed as to prevent accidental displacement.

**5.** 29 U.S.C.A. § 659(a), *supra.*

**6.** Prior to the administrative hearing, petitioner filed a jury trial demand and requested that it be accorded other rights incidental to criminal proceedings. At the same time Atlas moved to dismiss the complaint on the grounds that the enforcement procedures of the Act were unconstitutional. The ALJ, interpreting petitioner's motion as a challenge on Fifth, Sixth, and Seventh Amendment grounds, denied these motions for an assumed lack of power in OSHRECOM to pass on constitutional issues.

**7.** 29 C.F.R. 1926.500(f)(5)(ii).

**8.** 29 U.S.C.A. § 661(i).

**Hearing examiner; determination; report as final order of Commission**

(i) A hearing examiner appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such hearing examiner by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the hearing examiner shall become the final order of the Commission within thirty days after such report by the hearing examiner, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

**9.** 29 U.S.C.A. § 660(a).

**§ 660. Judicial review—Filing of petition by person adversely affected or aggrieved; orders subject to review; jurisdiction; venue; procedure; conclusiveness of record and findings of Commission; appropriate relief; finality of judgment**

(a) Any person adversely affected or aggrieved by an order of the Commission issued under subsection (c) of section 659 of this title may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office, or in the Court of Appeals for the District of Columbia Circuit, by filing in such court within sixty days following the issuance of such order a written petition praying that the order be modified or set

## II. The Constitutional Challenges

### When Is A Penalty A Fine?

One of petitioner's strongest points is that OSHA crosses that elusive line between criminal fines—that of necessity require the Sixth Amendment protections—and civil regulatory sanctions—that are left to fall back upon the more amorphous protections of due process. These distinctions are elemental in our legal tradition,[10] but where a statute such as OSHA contains both monetary fines and penalties for conduct that are perhaps only arguably different in quality, the distinction becomes ambiguous indeed. The distinctions are additionally blurred when Congress applies both types of enforcement measures to impose standards and regulate conduct in a relatively new arena such as employment safety and health. That is precisely the problem we consider here.

This issue has importance even beyond the case at hand because the streamlined enforcement procedure embodied in OSHA, although presently prescribed in only a few instances, has been recommended as a blueprint for a major revision of the enforcement systems of *all* federal agencies.[11] Therefore, in view of

aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and to the other parties, and thereupon the Commission shall file in the court the record in the proceeding as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying or setting aside in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. The commencement of proceedings under this subsection shall not, unless ordered by the court, operate as a stay of the order of the Commission. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record con-

sidered as a whole, shall be conclusive, and its recommendations, if any, for the modification or setting aside of its original order. Upon the filing of the record with it, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28. Petitions filed under this subsection shall be heard expeditiously.
29 C.F.R. 2200.92, as revised, 37 F.R. 20237, 20242.

#### Stay of final order

(a) Any party aggrieved by a final order of the Commission may, while the matter is within the jurisdiction of the Commission, file a motion for a stay.

(b) Such motion shall set forth the reasons a stay is sought and the length of the stay requested.

(c) The Commission may order such stay for the period requested or for such longer or shorter period as it deems appropriate.

10. *Huntington v. Attrill,* 1892, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, 1133; *Wisconsin v. Pelican Ins. Co.,* 1887, 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239, 243; *Passavant v. United States,* 1892, 148 U.S. 214, 13 S.Ct. 572, 37 L.Ed. 426; *Bartlett v. Kane,* 1853, 16 How. 263, 14 L.Ed. 931.

11. Goldschmid, An Evaluation of the Present and Potential Use of Civil Money Penalties as a Sanction by Federal Administrative Agencies Report to the Administrative Conference of the United States (1972), pp. 900–901.

Professor Goldschmid has recommended and the Administrative Conference of the United States has adopted the recommendation that federal agencies increase their use of civil money penalties as an alternative to other remedies such as license revocation proceed-

the importance of the issue, we analyze it here in terms of (i) the criminal and civil enforcement procedures of OSHA, (ii) the congressional intent discernible from the face of the statute and the legislative history and (iii) the multiple test espoused by the Supreme Court in *Kennedy v. Mendoza-Martinez.*[12]

## The Enforcement Structure of OSHA

Designed with the ambitious but socially laudable goal "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources,"[13] OSHA applies to all work-

ings in an effort to make their enforcement procedures more flexible and effective.

The present system may also be allowing some of the worst offenders (who will not settle and cannot feasibly be brought to trial) to get away. Even when cases are carried forward, serious enforcement problems are often created by excessive delay. The FAA, for example, recently protested to the Department of Justice about cases involving "the question of safety in air transportation," in which "processing . . . is of great importance," which were being subjected to "excessive delays."

From the standpoint of alleged offenders, the present system is unsatisfactory because, as a practical matter, they are often denied procedural protections and an impartial forum, and may be forced to acquiesce in unfair settlements because of the lack of a prompt and economical procedure for judicial resolution. When, for example, the Bureau of Customs seizes $1,900 worth of goods can an alleged offender—no matter how much he believes in his case—afford to litigate in federal district court rather than settle for $1,200?

Of course, many of the settlements offered by agencies are perfectly fair. But there is every reason to provide an impartial forum and procedural protections *for those few* who wish to question a proposed imposition. The possibilities for arbitrariness, lack of consistency, and discriminatory exercises of authority are unnecessarily accentuated under the present system.

Especially where relatively small sums are involved, the realistic choice is either (i) to provide that *very small percentage* of alleged offenders who wish to litigate (or the agency itself in an equally small number of instances) an opportunity for speedy and inexpensive adjudications under an administrative imposition scheme, or (ii) to deny (on the basis of the theoretical availability of *de novo* judicial review) both sides an impartial forum altogether. For most money penalty cases, the opportunity for a speedy and inexpensive adjudication is basic to a just imposition scheme. Factors whose presence tend to commend the imposition of civil money penalties by agencies themselves are set forth in Part B of the recommendation.

The administrative imposition system proposed would, at the option of either party, provide for an adjudicative proceeding, on the record, pursuant to Sections 5–8 of the Administrative Procedure Act, 5 U.S.C. §§ 554–57 (1970). Agencies are urged to adopt rules of practice which will maximize the possibility of securing just, inexpensive, and speedy adjudications. An agency's decision would be final unless appealed within a stipulated number of days. If an appeal is taken to a United States Court of Appeals, an agency's decision would be sustained if supported by substantial evidence.

An adjudicative proceeding would, of course, prohibit a commingling of adversarial and decisional functions. It is expected that substantial evidence review will be an ultimate, though seldom used, protection against abuse. Procedures for settlement by means of remission, mitigation and compromise would, of course, be retained. Administrative imposition is intended to bring fairer, not necessarily fewer, settlements. See also footnote 43, *infra.*

12. 1963, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644.

13. 29 U.S.C.A. §§ 651, 652(5), 653(a).

§ 651. **Congressional statement of findings and declaration of purpose and policy**

(a) The Congress finds that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments.

(b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—

(1) by encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and to perfect existing pro-

grams for providing safe and healthful working conditions;

(2) by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions;

(3) by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under this chapter;

(4) by building upon advances already made through employer and employee initiative for providing safe and healthful working conditions;

(5) by providing for research in the field of occupational safety and health, including the psychological factors involved, and by developing innovative methods, techniques, and approaches for dealing with occupational safety and health problems;

(6) by exploring ways to discover latent diseases, establishing causal connections between diseases and work in environmental conditions, and conducting other research relating to health problems, in recognition of the fact that occupational health standards present problems often different from those involved in occupational safety;

(7) by providing medical criteria which will assure insofar as practicable that no employee will suffer diminished health, functional capacity, or life expectancy as a result of his work experience;

(8) by providing for training programs to increase the number and competence of personnel engaged in the field of occupational safety and health;

(9) by providing for the development and promulgation of occupational safety and health standards;

(10) by providing an effective enforcement program which shall include a prohibition against giving advance notice of any inspection and sanctions for any individual violating this prohibition;

(11) by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States to assist in identifying their needs and responsibilities in the area of occupational safety and health, to develop plans in accordance with the provisions of this chapter, to improve the administration and enforcement of State occupational safety and health laws, and to conduct experimental and demonstration projects in connection therewith;

(12) by providing for appropriate reporting procedures with respect to occupational safety and health which procedures will help achieve the objectives of this chapter and accurately describe the nature of the occupational safety and health problems;

(13) by encouraging joint labor-management efforts to reduce injuries and disease arising out of employment.

### § 652. Definitions

For the purposes of this chapter—

(1) The term "Secretary" mean [1] the Secretary of Labor.

(2) The term "Commission" means the Occupational Safety and Health Review Commission established under this chapter.

(3) The term "commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between a State and any place outside thereof, or within the District of Columbia, or a possession of the United States (other than the Trust Territory of the Pacific Islands), or between points in the same State but through a point outside thereof.

(4) The term "person" means one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons.

(5) The term "employer" means a person engaged in a business affecting commerce who has employees, but does not include the United States or any State or political subdivision of a State.

(6) The term "employee" means an employee of an employer who is employed in a business of his employer which affects commerce.

(7) The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, and the Trust Territory of the Pacific Islands.

(8) The term "occupational safety and health standard" means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment.

(9) The term "national consensus standard" means any occupational safety and health standard or modification thereof which (1) has been adopted and promulgated by a nationally recognized standards-producing organization under procedures whereby it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agreement on its adoption, (2) was formulated in a manner

ers employed in businesses that affect interstate commerce.[14]

To accomplish this vast objective, Congress passed a labor safety standards form of administrative program. Under OSHA, the Secretary of Labor (Secretary) is vested with the power to both promulgate and enforce compliance with the safety standards set for individual industries throughout the country. As enforcement measures, OSHA provides for both civil and criminal penalties. The Justice Department prosecutes employers in federal district court when job conditions are deemed to warrant criminal prosecution, but the Secretary enforces the civil penalties before the autonomous forum of the OSHRECOM.[15] Since Atlas challenges these specific civil enforcement procedures on the grounds

that they violate Article III and the Fifth, Sixth and Seventh Amendments, close scrutiny of the nature and process of civil censure under these provisions is necessary.

The enforcement procedures of OSHA have three stages—citation, administrative hearing, and court review. Each stage is distinct because unless the employer initiates the next level of review, the penalty becomes final and unreviewable.

The citation procedure begins when an inspector, acting in response to a complaint or on his own investigation, determines that the employer has violated either a specific safety standard or the general duty provision requiring the employer to provide a safe working environment.[16] The citation given by the in-

---

which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.

(10) The term "established Federal standard" means any operative occupational safety and health standard established by any agency of the United States and presently in effect, or contained in any Act of Congress in force on December 29, 1970.

(11) The term "Committee" means the National Advisory Committee on Occupational Safety and Health established under this chapter.

(12) The term "Director" means the Director of the National Institute for Occupational Safety and Health.

(13) The term "Institute" means the National Institute for Occupational Safety and Health established under this chapter.

(14) The term "Workmen's Compensation Commission" means the National Commission on State Workmen's Compensation Laws established under this chapter.

§ 653. Geographic applicability; judicial enforcement; applicability to existing standards; report to Congress on duplication and coordination of Federal Laws; workmen's compensation law or common law or statutory rights, duties, or liabilities of employers and employees unaffected

(a) This chapter shall apply with respect to employment performed in a workplace in a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, Guam, the Trust Territory of the Pacific Islands, Wake Island,

Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act, Johnston Island, and the Canal Zone. The Secretary of the Interior shall, by regulation, provide for judicial enforcement of this chapter by the courts established for areas in which there are no United States district courts having jurisdiction.

14. President Johnson in 1968 proposed the first comprehensive occupational health and safety program. S. 2,864, 90th Cong., 2nd Sess. (1968). (Senator Yarborough introducing the Administration's proposal). *See also Bureau of National Affairs, Job Safety and Health Act of 1970,* at 16 (1971).

15. Id. § 661.

§ 661. Occupational Safety and Health Review Commission—Establishment; membership; appointment; Chairman

(a) The Occupational Safety and Health Review Commission is hereby established. The Commission shall be composed of three members who shall be appointed by the President, by and with the advice and consent of the Senate, from among persons who by reason of training, education, or experience are qualified to carry out the functions of the Commission under this chapter. The President shall designate one of the members of the Commission to serve as Chairman.

16. Id. § 654.

§ 654. Duties of employers and employees

(a) Each employer—

(1) shall furnish to each of his employees employment and a place of employ-

spector lists the nature of the violation as well as the time set for abatement.[17]

Within a reasonable time thereafter, the Secretary shall assess and notify the employer of the penalty, if any, that will itself be based on the nature of the violation. For initial violations of OSHA an employer may be subject to a $10,000 penalty for either (1) willful violations [18] or for violations that are determined to be serious,[19] i. e., " * * * [have] a substantial probability that death or serious harm could result from a condition that exists * * * unless the employer did not, and could not with the exercise of due diligence know of the presence of the violation." [20]

Alternatively, criminal proceedings may be triggered by conditions that the Secretary considers both willful and serious and the employer shall upon conviction be subject to a fine of up to $10,000 and six months in jail.[21]

---

ment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this chapter.

(b) Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct.

See also the discussion by Chief Judge Gibson regarding the specific industrial standards in *American Smelting and Refining Co. v. Occupational Safety and Health Review Commission*, 8 Cir., 1974, 501 F.2d 504.

**17.** Id. § 658.

**§ 658. Citations—Authority to issue; grounds; contents; notice in lieu of citation for de minimis violations**

(a) If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, of any standard, rule or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, he shall with reasonable promptness issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The Secretary may prescribe procedures for the issuance of a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health.

**Posting**

(b) Each citation issued under this section, or a copy or copies thereof, shall be prominently posted, as prescribed in regulations issued by the Secretary, at or near each place a violation referred to in the citation occurred.

**Time for issuance**

(c) No citation may be issued under this section after the expiration of six months following the occurrence of any violation.

**18.** Id. § 666(a)–(c).

**§ 666. Civil and criminal penalties**

(a) Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

(b) Any employer who has received a citation for a serious violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, shall be assessed a civil penalty of up to $1,000 for each such violation.

(c) Any employer who has received a citation for a violation of the requirements of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of regulations prescribed pursuant to this chapter, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $1,000 for each such violation.

**19.** Id. § 666(b).

**20.** Id. §§ 666(b) and (j).

(j) For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

**21.** Id. § 666(e)–(g):

(e) Any employer who willfully violates any standard, rule, or order promulgated

On receipt of the Secretary's citation, an employer has 15 days to notify the Secretary that he intends to challenge the penalty [22] or the penalty becomes final and unreviewable. Once such a challenge is made, the Secretary is required to initiate the administrative hearing by notifying OSHRECOM.[23] The ALJ conducts a full hearing [24] and thereafter makes a report that will itself become the final decision of OSHRE-COM unless the parties seek and the Commission grants discretionary review.[25]

Thereafter the final stage is review in the Court of Appeals and thereafter the discretionary review by the Supreme

22. Id. § 659(a).

23. Id. § 659(c).

Advisement of Commission by Secretary of notification of contest by employer of citation or notification or of filing of notice by any employee or representative of employees; hearing by Commission; orders of Commission and Secretary; rules of procedure

(c) If an employer notifies the Secretary that he intends to contest a citation issued under section 658(a) of this title or notification issued under subsection (a) or (b) of this section, or if, within fifteen working days of the issuance of a citation under section 658(a) of this title, any employee or representative of employees files a notice with the Secretary alleging that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section). The Commission shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.

The Secretary's notification to OSHRECOM·of the employer's intention to contest is denominated a formal "complaint" in the record below.

24. Id. § 661(i) and 29 C.F.R. § 2200.72 (1973).

Hearing examiner; determination; report as final order of Commission

(i) A hearing examiner appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such hearing examiner by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the hearing examiner shall become the final order of the Commission within thirty days after such report by the hearing examiner, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

29 C.F.R. § 2200.72 (1973) directs that hearings before the OSHRECOM and its ALJs shall be in accordance with the Administrative Procedure Act, 5 U.S.C.A. § 554 (1967) and the Federal Rules of Evidence shall be applicable.

25. 29 U.S.C.A. § 661(i) (1974); 29 C.F.R. § 2200.91, as revised, 37 F.R. 20237, 20242. In the case of Atlas since no member of the Commission directed that the decision of the ALJ be reviewed, it became final on May 7, 1973.

pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

(f) Any person who gives advance notice of any inspection to be conducted under this chapter, without authority from the Secretary or his designees, shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both.

(g) Whoever knowingly makes any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this chapter shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months, or by both.

Court.[26] The Court of Appeals review is on the APA substantial-evidence-on-the-record - considered - as-a-whole-standard. The Court, however, may direct the Commission to consider additional evidence if it is found that the evidence is both material and reasonable grounds existed for the failure to admit it in the hearing before the Commission.[27]

One additional feature of OSHA that Atlas sharply contests is § 659(b). This provision allows the Secretary retroactively to assess an additional non-abatement penalty for each day following the expiration of the initial abatement period whenever he determines that the employer did not initiate the review procedures (either before the Commission or the Court of Appeals) in good faith or did so only in order to avoid the penalties imposed.

### On The Face Of OSHA

The Government argues that OSHA successfully survives the Atlas Sixth Amendment attack because the provisions for civil and criminal enforcement specified in the statute are precise and distinct and, additionally, because the legislative history clearly demonstrates that Congress purposefully chose remedial rather than punitive consequences to accompany the civil provisions. The Government naturally stresses the long accepted maxim that Congress may use either civil or criminal measures to control similar conduct. But although Congress has enormous flexibility in the selection of enforcement measures, the existence of both civil and criminal alterna-

tives does not alone suffice to validate the statute.[28] Similarly, the absence of any mention of punishment in the legislative history does not immunize the statute from further review.[29] Although acknowledging the seriousness of the potential penalties the one court that has presently considered these challenges to the statute has upheld it.[30]

The criticism elicited by the statute,[31] and the enormous potential effects of a proliferation of OSHA-like enforcements systems are factors that persuade us that we should carefully scrutinize the statute against the case-law experience.

### Functional Analysis Of Congressional Intent

 The starting place is the Supreme Court's decision in *Kennedy v. Mendoza-Martinez*[32] to test Congressional intent and permissible Congressional latitude in prescribing civil rather than criminal consequences.

The Court summed up the factors:
[I] Whether the sanction involves an affirmative disability or restraint, [II] whether it has historically been regarded as a punishment, [III] whether it comes into play only on a finding of scienter, [IV] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [V] whether the behavior to which it applies is already a crime, [VI] whether an alternative purpose to which it may rationally be connected is assignable for it, and [VII] whether it appears excessive in relation to the al-

---

**26.** See 29 U.S.C.A. § 660(a). The only provision for District Court participation in the imposition of civil penalties under OSHA is contained in 29 U.S.C.A. § 666(k). If not administratively collected, the Secretary may bring an action in the District Court to recover the civil penalties imposed by the Commission, but there is to be no relitigation of the question of liability or the amount of the civil penalty itself.

**27.** 29 U.S.C.A. § 660(a).

**28.** See *Lipke v. Lederer,* 1922, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061, 1065.

**29.** *Trop v. Dulles,* 1957, 356 U.S. 86, 94, 78 S.Ct. 590, 2 L.Ed.2d 630.

**30.** See *Frank Irey, Jr., Inc. v. OSHA,* 3 Cir., 1974, 519 F.2d 1200 [rehearing en banc granted, Dec. 20, 1974]. On the eve of filing our opinion the Court en banc sustained the panel, holding the Act valid against Seventh Amendment attacks. 519 F.2d 1200 [July 24, 1975].

**31.** *See* Hay, OSHA Penalties: Some Constitutional Considerations, 10 Idaho L.Rev. 223 (1974); 10 Hous.L.Rev. 426, 437 (1973).

**32.** 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644.

ternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Absent conclusive evidence of congressional intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face.[33]

[I] "Whether the sanction involves an affirmative disability or restraint." This first test gives some weight to Atlas' arguments because even though monetary penalties do not fit within the conventional definition of disability,[34] i. e., want of legal capability, they do inflict a pocket-book deterrence or restraint on the recipient.

[II] "Whether the sanction has historically been considered a punishment."[35] This is of little aid to Atlas. While it is true, as Atlas argues, that fines have long been used as an alternative punishment, that argument, when used here, begs the question for civil monetary penalties have in a similar manner long been accepted where they served a remedial rather than a punitive function.[36] And we come full circle again to the question of the remedial function of the Act.

[III] "Whether the sanction is activated only upon a finding of scienter." This gives Atlas little support for its argument. While § 666(b), the provision under which Atlas was cited, appears superficially to be a "strict liability" provision imposing a mandatory penalty whenever an employer is cited for a serious violation, an employer may defend against such a charge on the grounds that he "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."[37] Of course, the fact that OSHRECOM may consider the good faith of the employer and previous violations in determining the appropriateness of the assessed civil penalty[38] does not orbit to the apogee of a suspected scienter factor.

But this is not a requirement analogous to the criminal law concept embraced in the conclusory "scienter" concept. The employer has a defense if he did not nor should not have known. But this is a far cry from limiting his obliga-

---

**33.** Id. at 168, 83 S.Ct. at 568. Bracketed numbers have been inserted for ease of reference.

**34.** For factor [I] the Supreme Court cited: *Ex parte Garland,* 1866, 4 Wall. 333, 377, 18 L.Ed. 366, 369 (exclusion from practice of law in the courts of the United States); *United States v. Lovett,* 1946, 328 U.S. 303, 316, 66 S.Ct. 1073, 90 L.Ed. 1252, 1259 (denial of federal employment);. *Flemming v. Nestor,* 1960, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435, 1448 (denial of a non-contractual government benefit held not to be a punishment).

**35.** For factor [II] the Supreme Court cited: *Cummings v. Missouri,* 1866, 4 Wall. 277, 320–21, 18 L.Ed. 356, 362 (disqualification from lawful advocation as a clergyman held to be punishment); *Ex parte Wilson,* 1885, 114 U.S. 417, 426–29, 5 S.Ct. 935, 29 L.Ed. 89, 92 (imprisonment at hard labor held to be infamous punishment necessitating the right to grand jury indictment); *Mackin v. United States,* 1886, 117 U.S. 348, 350–52, 6 S.Ct. 777, 29 L.Ed. 909–911 (imprisonment and hard labor held to be infamous punishment); *Wong Wing v. United States,* 1896, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (imprisonment and hard labor).

**36.** *Trop v. Dulles,* 1958, 356 U.S. 86, 96–97, 78 S.Ct. 590, 595, 2 L.Ed.2d 630, 640.

But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose.[20] The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature. The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote.[21] If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise.

**37.** 29 U.S.C.A. § 666(j).

Of the two other civil penalties allowed for initial violations, one § 666(a) permits citation for willful violations and the other § 666(c) permits penalties for non-serious violations irrespective of scienter.

**38.** 29 U.S.C.A. § 666(i).

tions to situations in which he knowingly and intentionally acted or refrained from acting. The statute itself expressly distinguishes between acts which on usual tort principles are charged to employers and those willfully done.[39]

[IV] "Whether the statute promotes the traditional aims of punishment, retribution and deterrence."[40] This lends some weight to both sides. In Atlas' favor, retributive effect may be seen in the statutory provisions that civil penalties shall be assessed according to the gravity of the violation.[41] Similarly, OSHA may be said to have a deterrent effect in the sense that the penalties assessed against the employers compel compliance with the safety standards.

But the government argues that deterrence is not the function solely of a criminal statute. It contends that "remedial" means not only compensatory but a kind of prospective deterrence of a means to encourage compliance with the government regulation. As examples it cites the extensive series of cases flowing from the seminal *Oceanic Steam Navigation Co. v. Stranahan*[42] for the proposition that the government may appropriately assess monetary penalties by administrative enforcement as a function of its absolute power—within Constitutional limits—to control matters within the competence of the National sovereign. While these cases involve specific areas that have traditionally been considered the exclusive province of the federal government, such as tariffs and immigration, the government properly argues that there is no reason for so limiting their application. In support of this the government cites numerous statutes permitting civil penalties to be imposed by the administrative agency for violations of its regulation or orders.[43]

**39.** See *American Smelting & Refining Co. v. Occupational Safety & Health Commission*, 8 Cir., 1974, 501 F.2d 504. We intimate no view on the status of a "willful" charge as criminal or civil.

**40.** The Supreme Court cited for [IV] factor: *United States v. Constantine,* 1935, 296 U.S. 287, 295, 56 S.Ct. 223, 80 L.Ed. 233, 238 (a purported "special excise tax" assessed against those retail liquor dealers doing business contrary to the local state or municipal law held to be a penalty for unlawful liquor sale rather than a tax); *Trop v. Dulles,* 1958, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630, 641, 648–49 (penalty of expatriation for servicemen who deserted during time of war held to be a punishment).

**41.** 29 U.S.C.A. § 666(i). See also 10 Hous.L. Rev. at 442 where the author argues that in addition to the commission's powers to consider the gravity of the offense in assessing penalties, retributive effect is discernable in OSHA because it provides two penalties where the identical behavior results in varying degrees of harm. But, while it is true that §§ 666(a) provide for civil penalties for willful violations and 666(e) does provide for criminal penalties if death occurs, one is not compelled to draw a comparison between a criminal and a civil sanction for the purpose of determining whether the entire statute has a retributive effect. It is entirely proper for a criminal sanction to have a retributive effect and similarly it is only to be expected that Congress would conclude that a statutory scheme should be designed to impose upon the more serious conduct criminal rather than civil penalties alone.

**42.** 1909, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013; *Lloyd Sabaudo Societa v. Elting,* 1932, 287 U.S. 329, 333–35, 53 S.Ct. 167, 77 L.Ed. 341; *Elting v. North German Lloyd,* 1932, 287 U.S. 324, 53 S.Ct. 164, 77 L.Ed. 337; *Hepner v. United States,* 1909, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720; *Passavant v. United States,* 1893, 148 U.S. 214, 13 S.Ct. 572, 37 L.Ed. 426; *Bartlett v. Kane,* 1885, 16 How. 263, 14 L.Ed. 931.

**43.** The appendix to Professor Goldschmid's Report (see footnote 11, *supra*) is instructive on the issue.

EXHIBIT I

to

APPENDIX A

Illustrative Catalogue of Statutory Provisions Pursuant to Which Federal Administrative Agencies (or the Courts) Impose Civil Money Penalties

| Agency-Citation | Purpose | Penalty |
|---|---|---|
| *Executive Departments— Agriculture:* | | |
| 7 U.S.C. § 1314(a) (1970). | Marketing of tobacco in excess of marketing quota. | 75% of average market price of tobacco for preceding year. |
| 7 U.S.C. § 1340(2) (1970). | Marketing of wheat in excess of marketing quota. | 65% of parity price per bushel of wheat. |
| 7 U.S.C. § 1346(a) (1970). | Marketing of cotton in excess of marketing quota. | 50% of parity price per pound of cotton. |
| 7 U.S.C. § 1356(a) (1970). | Marketing of rice in excess of marketing quota. | 65% of parity price per pound of rice. |
| 7 U.S.C. § 1359(a) (1970). | Marketing of peanuts in excess of marketing quota. | 75% of the support price for peanuts. |
| 7 U.S.C. § 1155(a) (1970). | Sugar knowingly marketed or imported in excess of sugar quotas. | Three times market value of the sugar. |
| 7 U.S.C. § 1155(b) (1970). | Sugar imported and processed as raw sugar which is determined to be direct-consumption sugar. | $0.01 per pound in excess of direct-consumption sugar quota. |
| 7 U.S.C. § 1433 (1970). | Misuse of feed intended to relieve distress or preserve foundation herds. | Market value of the feed involved. |
| 7 U.S.C. § 1379i(a) (1970). | Failure to conform to the Secretary's requirements for domestic wheat marketing certificates, export marketing certificates, or other required certificates. | Twice the face value of the marketing certificates. |
| 7 U.S.C. § 610(c) (1970). | Willful disclosure of confidential marketing information. | $100. |
| 7 U.S.C. § 499c(a) (1970). | Failure of broker to obtain license. | Up to $500 each offense; up to $25 for each day it continues. |
| 45 U.S.C. §§ 73, 74 (1970). | Failure to properly care for animals in transit. | $100–$500. |
| 7 U.S.C. § 1596(b) (1970). | Violation of provisions of Federal Seed Act. | $25–$500. |
| 7 U.S.C. § 203 (1970). | Failure to register stockyard. | Up to $500/each offense, up to $25 for each day it continues. |
| 7 U.S.C. § 207(g) (1970). | Failure to comply with rate provisions, regulations or orders. | Up to $500/each offense, up to $25 for each day it continues. |

| Agency—Citation | Purpose | Penalty |
|---|---|---|

| 7 U.S.C. § 215(a) (1970). | Failure to obey Secretary's order concerning rates discrimination or deceptive practices. | $500/each offense. |
| 7 U.S.C. § 2149(a) (1970). | Animal Welfare Act of 1970. | $500/each offense. |
| 15 U.S.C. § 1825(a) (1970). | Horse Protection Act of 1970. | $1000/each offense. |

**Commerce:**

| | | |
|---|---|---|
| a. FTZB: 19 U.S.C. § 81S [81s] (1970). | Foreign Trade Zones ....... | Up to $1000. |
| b. BIC: 50 U.S.C. § 2405(c) (1970). | Violation of provisions or regulations concerning import control. | Up to $1000. |
| c. NOAA: 16 U.S.C. § 772f (1970). | Records and reports ....... | $50/each violation. |
| 16 U.S.C. § 957(d) (1970). | Knowingly shipping, transporting, etc., any fish taken or retained in violation of regulations. | (1) Up to $25,000 for the first violation, (2) up to $50,000 for subsequent violations. |
| 16 U.S.C. § 957(e) (1970). | Failure to keep statistical records, etc. | (1) Up to $1,000 for the first violation; (2) up to $5,000 for subsequent violations. |
| 16 U.S.C. § 957(f) (1970). | Importation of certain species of fish contrary to regulation. | Up to $100,000. |
| 16 U.S.C. § 989(o) (1970). | Violation of any provision of or regulation under N.W. Atlantic Fisheries Act. | (a) Up to $500 for the first violation (b) up to $1000 for subsequent violations. |
| d. MA: 46 U.S.C. §§ 808, 835 (1970). | Violation of Shipping Act. | Money penalty in lieu of forfeiture from $500 to $1000. |

**Interior:**

| | | |
|---|---|---|
| 18 U.S.C. § 43(c) (1970). | Transportation of wildlife taken in violation of State, national, or foreign laws. | Up to $5000 for each violation. |
| 30 U.S.C. § 819(a) (1) (1970). | Violations of coal mine health and safety standards. | Up to $10,000 for each violation. |
| 30 U.S.C. § 819(a) (2) (1970). | Willful violation of standards relating to smoking. | Up to $250. |

**Justice:**

| | | |
|---|---|---|
| a. BNDD: 21 U.S.C. § 842 (1970). | Unlawful distribution of a controlled substance, failure to keep records, unlawful use of seal placed on such substances. | Up to $25,000. |
| b. INS: 8 U.S.C. § 1221(d) (1970). | Failure of manifests for shipments or aircraft to comply with the requirements of this section. | $10 per person not included in the manifest. |

| Agency–Citation | Purpose | Penalty |
|---|---|---|
| 8 U.S.C. § 1223(c) (1970). | Failure to comply with provisions concerning examination upon arrival. | Cost of maintenance including detention expense; $300 for each violation. |
| 8 U.S.C. § 1227(b) (1970). | Failure to provide immediate deportation of aliens excluded from admission (or entering in violation of law). | Same as above. |
| 8 U.S.C. § 1229 (1970). | Violation of any regulation concerning ports of entry for aliens arriving by aircraft. | $500. |
| 8 U.S.C. § 1253(c) (1970). | Deportation proceedings within 5 years after the entry of the alien for causes existing at time of arrival. | Cost of deportation to owner of vessel. |
| 8 U.S.C. § 1281(d) (1970). | Failure to deliver true and accurate list of alien crewmen. | $10 for each alien not reported. |
| 8 U.S.C. § 1284(a) (1970). | Failure to detain alien crewman until an immigration officer has inspected the crewman. | $1000 for each failure. |
| 8 U.S.C. § 1285 (1970). | Employment on passenger vessels or aircraft of aliens afflicted with certain disabilities. | $50 for each alien. |
| 8 U.S.C. § 1286 (1970). | Unlawful discharge in United States of alien crewman. | $1000 for each violation. |
| 8 U.S.C. § 1321 (1970). | Failure to prevent the unauthorized landing of aliens. | $1000 for each violation. |
| 8 U.S.C. § 1322(a)(b) (1970). | Bringing in aliens subject to disability or afflicted with certain diseases. | $1000 or $250 depending on the alien's condition. |
| 8 U.S.C. § 1323(a)(b) (1970). | Unlawful bringing of aliens into United States. | $1000 for each violation. |
| 8 U.S.C. § 1287 (1970). | Intent to evade immigration laws or bring alien crewmen into United States with intent to evade immigration laws. | Up to $5000 each violation. |
| Labor with OSHRC: 29 U.S.C. § 666 (1970). | Occupational safety and health: (a) willful or repeated violations. (b) other violations . . . . | (a) up to $10,000. (b) up to $1,000. |
| Transportation: a. NHTSA: 15 U.S.C. § 1398(a) (1970). | Failure to comply with safety standards. | Up to $1,000 for each violation and $400,000 per related series of violations. |
| b. FAA: 49 U.S.C. § 1471(a)(1) (1970). | Violation of provisions and regulations. | Up to $1,000 for each violation. |

| Agency—Citation | Purpose | Penalty |
|---|---|---|

c. FRA:

| | | |
|---|---|---|
| 45 U.S.C. § 64a(a) (1970). | Hours of service .......... | $500 for each violation. |
| 45 U.S.C. §§ 6, 13 (1970). | Safety appliance. | $250 for each violation. |
| 45 U.S.C. § 34 (1970). | Locomotive inspection. | $250 for each violation. |
| 49 U.S.C. § 27 [26] (h) (1970). | Signal inspection. | $100 for each violation and $100 for each day violation continues. |
| 45 U.S.C. § 438(b) (1970). | Violation of provisions and regulations. | $250–$2,500; each day considered a separate violation. |

d. USCG:

| | | |
|---|---|---|
| 33 U.S.C. § 157a (c) (1970). | Navigating or operating a vessel under bridges in violation of regulations. | Up to $500. |
| 33 U.S.C. § 158 (1970). | Penalty for violations of chapter 3 (navigation rules for harbors, rivers, and inland waters) by pilot, engineer, mate, or master. | Up to $500. |

[The USCG enforces 85 other civil money penalty provisions.]

e. FHWA: 49 U.S.C. § 322(h) (1970).

| | | |
|---|---|---|
| | Violation of various motor carrier safety regulations by certain motor carriers. | $500 for each offense and up to $250 for each additional day. |

Treasury:

a. IRS:

| | | |
|---|---|---|
| Internal Revenue Code § 6651(a). | Failure to file tax return or to pay tax. | 0.5%–25%. |
| Internal Revenue Code § 6652. | Failure to file certain information returns. | $1–$25,000. |
| Internal Revenue Code § 6653(a)(b). | Failure to pay tax through: (1) negligence ........ (2) fraud ........... | (1) 5% of underpayment. (2) 50% of underpayment. |

[The IRS enforces 18 other civil money penalty provisions.]

b. Customs:

| | | |
|---|---|---|
| 19 U.S.C. § 292 (1970). | Failure to file manifests going to or leaving place where there is no custom house. | $20 each offense. |
| 19 U.S.C. § 469 (1970). | Dealing in or using empty stamped imported liquor containers. | $200 for each cask. |

[Customs enforces 33 other civil money penalty provisions.]

c. ODGSO: 31 U.S.C. § 443 (1970).

| | | |
|---|---|---|
| | Acquisition and use of gold in violation of law. | Twice the value of the gold and forfeiture, seizure and condemnation of property. |

| Agency—Citation | Purpose | Penalty |
| --- | --- | --- |
| Independent agencies: | | |
| AEC: 42 U.S.C. § 2282 (1970). | Violations of licensing requirements. | Up to $5,000 for each violation to a maximum total penalty of $25,000 within 30 days. |
| CAB: 49 U.S.C. § 1471(o) [(a)] (1970). | Violation of provisions and regulations. | Up to $1000 for each violation. |
| 49 U.S.C. § 1474(a) (1970). | Violations regarding application of existing laws relating to foreign commerce. | $500/each offense. |
| FCC: | | |
| 47 U.S.C. § 202(c) (1970). | Common carrier—discrimination and preferences. | $500 each offense and $25 for each day of continuance of offense. |
| 47 U.S.C. § 214(d) (1970). | Common carrier—extension of lines. | $100/day. |
| 47 U.S.C. § 503(b) (1970). | Broadcast-stipulated violations. | Up to $1,000 per violation and total of not more than $10,000. |
| 47 U.S.C. § 510(a) (1970). | Stipulated violations ........ | Up to $100/violation and a total of not more than $500. |
| [The FCC enforces 6 other civil money penalty provisions.] | | |
| EPA: | | |
| 42 U.S.C. § 1857F–4 [1857f–4] (1970). | Violation of provisions or regulations relating to interstate dealings in automobile and engines not meeting exhaust emission standards. | Up to $10,000. |
| 42 U.S.C. § 1857d(j)(2) (1970). | Failure to submit reports .... | $100 per day. |
| 33 U.S.C. § 1161(f)(2) (1970). | Violation of provisions and regulations of Federal Water Pollution Act. | Up to $5,000 [$8,000,000] |
| FHLBB: | | |
| 12 U.S.C. § 1425a(d) (1970). | Deficiency with liquidity requirements under the Federal Home Loan Bank Act. | Up to the highest rate of advances of one year, plus 2% per annum. |
| 12 U.S.C. § 1425b(b) (1970). | Violation of rule .......... | Up to $100/per violation. |
| [The FHLBB enforces 4 other civil money penalty provisions.] | | |
| FMC: 46 U.S.C. § 801 et seq. (1970). | Violation of statutory provisions. | Up to $5,000. |
| FRS: | | |
| 12 U.S.C. § 324 (1970). | Failure to make reports of conditions and of payment of dividends to Federal Reserve bank. | $100/day till submission. |
| 12 U.S.C. § 334 (1970). | Failure to furnish reports from affiliates. | $100/day till submission. |

| Agency—Citation | Purpose | Penalty |
|---|---|---|

| Agency—Citation | Purpose | Penalty |
|---|---|---|
| 12 U.S.C. § 374a (1970). | Acting as agent for non-banking borrower in making loans on securities to dealers in stocks, bonds, etc. | Up to $100/day. |
| 12 U.S.C. § 377 (1970). | Affiliation with organization dealing in securities. | Up to $1,000/day. |
| 12 U.S.C. § 1908(a) (1970). | Willful violation of any regulation under chapter 20, credit control. | Up to $1,000. |
| **FTC:** | | |
| 15 U.S.C. 45($l$) (1970) | Violation of cease and desist order. | Up to $5,000/each violation; each day a violation. |
| 15 U.S.C. 65 (1970). | Export trade, failure to supply required information. | $100/each day of failure. |
| 15 U.S.C. 68d(b) (1970). | Wool products labeling, failure to maintain records. | $100/each day of failure. |
| 15 U.S.C. 69f (1970). | Fur products labeling, failure to maintain records. | $100/each day of failure. |
| 15 U.S.C. 21($l$) (1970) | Violation of order of Commission. | Up to $5,000/each violation; each day a violation. |
| **ICC:** | | |
| 49 U.S.C. § 1 (12) (1970). | Failure to prorate .......... | $100/each offense. |
| 49 U.S.C. § 1 (17)(a) (1970). | Failure to comply with order. | $100–$500 for each offense and $50/day. |
| [The ICC enforces 10 other civil money penalty provisions.] | | |
| SEC: 15 U.S.C. § 78ff(b) (1970). | Failure to file information, documents or reports. | $100 for each day. |
| SBA: 15 U.S.C. § 687g (1970). | Violation of any regulation or written directive requiring the filing of a report. | Up to $100/per day for each day of continuance. |
| **Postal Service:** | | |
| 39 U.S.C. § 5206 (1970). | Failure to perform mail transportation services as required. | (a) up to $500 for each day the carrier refuses, (b) an amount the Postal Service deems reasonable, (c) deductions from compensation. |
| 39 U.S.C. § 5603 (1970). | A common carrier by water fails or refuses to transport the mail. | Up to $500 for each day the carrier refuses. |
| 49 U.S.C. § 1471(a) (1970). | Violation of regulations ....... | Up to $1,000 for each such violation. |

In addition, included below are several statutes providing for civil penalties which have been enacted since the compilation of Professor Goldschmid:

1. Ports and Waterways Safety Act of 1972, 46 U.S.C. 391a(11)(A) (1972 supp.).

2. Shipping Act amendments, 86 Stat. 653.

And when it comes to the factor of deterrence, the existence of over 200 million citizens most of whom are law abiding and who daily conduct their business and personal affairs without the fear of jail time or being tagged a felon, we know the greater efficacy of the much milder and less potent sanction of loss of license, civil penalties and the like. Business is encouraged to comply with the law not only because that is what the law exacts but because failing to do so will bring down on the activity or purse noncriminal consequences.

[V] "Whether the behavior to which it applies is already a crime." [44] This fits squarely on the Government's side of the score board. Although two sections of OSHA provide that the same conduct may be subject to both civil and criminal sanctions,[45] the remaining civil penalties are the sole enforcement measures provided under the Act. Atlas argues, however, that as to corporate defendants who are not subject to imprisonment, the civil sanctions are effectively the same as the criminal fines. But except in the one instance we noted, this argument appears to be incorrect especially if we consider Atlas' case as an example. Atlas was charged with a serious violation carrying a mandatory penalty of up to a thousand dollars.[46] While we have no difficulty (as discussed later) in upholding the ALJ decision of violation, this record would not permit—and OSHRECOM does not assert—that the conduct of Atlas constituting a violation of the regulation would have permitted prosecution for criminal fines.

---

3. Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1319(d), 1320(d), 1321(b), (j)(2), 1322(j) (1972 supp.).

4. Revenue sharing (Act of Oct. 20, 1972), 26 U.S.C. § 6687(a) (1972 supp.).

5. Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. § 136*l*(a) (1972 supp.).

6. Marine Mammal Protection Act of 1972, 16 U.S.C. § 1375 (1972 supp.).

7. Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1415 (a) (1972 supp.).

8. Bald Eagle Protection Act, as amended, 16 U.S.C. § 668(b) (1972 supp.).

9. Consumer Product Safety Act, 15 U.S.C. § 2069 (1972 supp.).

10. Endangered Species Act of 1973, 16 U.S.C.A. § 1540(a) (1974 supp.).

We note, however, that in only four of these instances does the agency whose regulations the defendant is accused of violating have the authority to itself impose a fine without a de novo review in the courts. These are the Immigration and Naturalization Service, OSHA, the Federal Home Loan Bank Board and the Postal Service.

---

44. As to factor [V] the Supreme Court cited: *Lipke v. Lederer*, 1922, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061 (tax under Volstead Act levied against one charged with liquor violations held invalid because the sanction had the characteristics of a fine, not a tax); *United States v. La Franca*, 1931, 282 U.S. 568, 572–73, 51 S.Ct. 278, 75 L.Ed. 551 (the same holding); *United States v. Constantine, supra*, 296 U.S. at 295, 56 S.Ct. 223 (similar holding but condition of tax was commission of crime under state law).

45. 29 U.S.C.A. § 666(a).

§ 666. Civil and criminal penalties
(a) Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation. 29 U.S.C.A. § 666(e).

(e) Any employer who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

46. 29 U.S.C.A. § 666(b).

Additionally, Atlas throws in the outworn argument that OSHA fails under the criminal vs. civil test because civil penalties are being imposed for what are essentially building code violations punishable by criminal sanctions under most state and municipal law. Now in the Twentieth Century it is too late to assert that there is anything improper in the election by Congress to impose its own sanctions—civil, criminal or both—without regard to its treatment by other components of our federalism.[47]

[VI] "Whether an alternative purpose other than punishment may rationally be ascribed to the sanction."[48] Actually, this factor is one which must be carefully restricted.[49] Unless caution is exercised, it puts the judiciary squarely in the middle of choices as to the kinds of remedies open and those most likely to achieve the legislative aim. What do Judges know about hazards of industry save what they see in the tragic case after the event of death or injury? Congress meant to put an end to the maiming or death of thousands. What facilities do Judges have for making inquiry into or evaluating what is the method best calculated to bring about the saving of life and limb?[50]

[VII] "Whether the sanction appears excessive when compared with the alternative purpose assigned."[51] While this certainly is a subjective factor, it is one that Atlas' arguments fail to hurdle as well. The remedial functions obviously served by the civil penalties of OSHA may in many circumstances justify imposing the maximum penalties available under the statute. These penalties will often be reduced by the mitigating factors that the imposing agency must con-

**47.** *Helvering v. Mitchell,* 1938, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917.

**48.** The Supreme Court cited for factor [VI]: *Cummings v. Missouri,* 1866, 4 Wall. 277, 18 L.Ed. 356 (state could not require a priest to pledge that he had never attempted to avoid military service by entering or leaving the state as a precondition to administering the sacraments of his church); *Fong Yue Ting v. United States,* 1893, 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905 (deportation held to be not punishment); *Hawker v. New York,* 1898, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (exclusion from practice of medicine following conviction for felony held to be an incident of State's power to protect health and safety, not additional punishment); *De Veau v. Braisted,* 1960, 363 U.S. 144, 157–60, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (disqualification of ex-felons from holding office in waterfront unions held within regulatory power of State to control union racketeering, not additional punishment); *United States v. Doremus,* 1919, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (provisions of Narcotic Drug Act for subjecting the sale and distribution of drugs to official supervision and inspection held to have a reasonable relation to enforcement of special tax on sale and distribution of such drugs); *Child Labor Tax Case,* 1922, 259 U.S. 20, 43, 42 S.Ct. 449, 453, 66 L.Ed. 817, 820 (" * * * the provisions of the so-called taxi act must be naturally and reasonably adapted to the collection of the tax, not solely to the achievement of some other purpose plainly within state power.") *Lipke v. Lederer, supra,* 259 U.S. at 561–62, 42 S.Ct. 549 (attacks as a penalty when its primary function is to define and suppress crime rather than provide for the support of the government); *Trop v. Dulles, supra,* 356 U.S. at 96–97, 78 S.Ct. 590 (expatriation was held to have "no other legitimate purpose" than to punish); *Flemming v. Nestor,* 1959, 363 U.S. 603, 615, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (disqualification of specific deportees from eligibility for Social Security benefits while not lawfully in the Country held to bear rationale relation to the purposes of statute therefore not a penalty).

**49.** But see 10 Idaho L.Rev. 223 (1974); 10 Hous.L.Rev. 426 (1973); U.S.Code Cong. and Admin.News, page 5177 (1970). [Senate Report No. 91–1282] (Minority Report).

**50.** *See generally Frank Irey, Jr., Inc. v. OSHA, supra,* 519 F.2d at page 1204 and note 30 *supra.*

**51.** The Supreme Court cited for factor [VII]: *Helwig v. United States,* 1903, 188 U.S. 605, 610–12, 23 S.Ct. 427, 47 L.Ed. 614, 616 (an additional duty imposed for undervalued customs declaration greatly in excess of the maximum amount of regular duty); *United States v. Constantine,* 1935, 296 U.S. 287, 295, 56 S.Ct. 223, 80 L.Ed. 233, 238 (special excise tax of $1,000 for retail liquor dealers in business contrary to state law, compared with $25 excise tax for lawful dealers); *Rex Trailer Co. v. United States,* 1956, 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149, 155 ($2,000 upheld as liquidated damages for fraudulent purchase of war surplus goods were it not so unreasonable or excessive as to convert the damages to a penalty).

sider in assessing the penalty.[52] For example, Atlas' own $600 penalty represents a reduction of $400 after the Secretary had considered the gravity of the offense, the size of the business, the good faith of the employer and the history of previous violations. We cannot say that that penalty is excessive if in the considered judgment of the Administrative Agency it results in improved industrial practices that help to prevent future deaths from falls of employees of Atlas.

The Supreme Court was conscious in *Kennedy v. Mendoza-Martinez* that the test it announced might point in divergent directions,[53] but each test was considered relevant to a determination of the character of a statute. While the civil penalties of OSHA are subject to scrutiny under several of these tests, taken as a whole, we think that Atlas has failed to demonstrate that Congress meant the statute to reprimand rather than regulate. The focus of the statute—the control of job site safety practices and health conditions—has a demonstrable and legitimate government concern. The fact that the civil enforcement sanctions are inherently disabilities does not alter the nature of the Congressional purpose.[54] And finally the Congressional purpose carefully to establish both civil and criminal sanctions and distinguishable procedures for imposing and reviewing them eliminate any question of Congressional intent. As Judge Friendly puts it. . . .

> "When Congress has characterized the remedy as civil and the only consequence of a judgment for the Government is a money penalty, the courts have taken Congress at its word."[55]

For those reasons Atlas, despite its strenuous efforts to show the punitive character of OSHA, must fail on this issue.

### III. The Seventh Amendment Challenge

Failing the Sixth Amendment and Article III hurdle, Atlas further argues that even if the penalties are termed civil, the Seventh Amendment requires that Congress provide a system of enforcement that gives employers the opportunity to put their case before a jury in a de novo proceeding in the District Court.[56] As support, Atlas cites *United States v. J. B. Williams Co.*[57] in which the Second Circuit held that a defendant had the right to a trial by jury in an action brought by the Attorney General in the District Court under 15 U.S.C.A. § 56 for violations of an F.T.C. cease-and-desist order, and the dissenting opinion of Judge Gibbons in *Frank Irey, Jr., Inc. v. OSHA, supra. Williams,* however, is readily distinguishable for there the only means of statutory enforcement was by way of the federal courts. Where adjudicative responsibility rests only in the administering agency, "jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the [agency's] role in the statutory scheme." *Curtis v. Loether,* 1974, 415 U.S. 189, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260, 266; see also *Pernell v. Southall Realty,* 1974, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198. The Second Circuit in *Williams* was cognizant of this distinction and held merely that where the United States brings a traditional civil suit in the District Court juries must be provided.

That the civil sanction under attack is in the form of a dollar penalty is not a sufficient distinction to deny the power

---

52. 29 U.S.C.A. § 666(j).

53. *Supra,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d at 660–62.

54. *Trop v. Dulles, supra,* 356 U.S. 97, 78 S.Ct. 590, 2 L.Ed.2d at 639–40.

55. *United States v. J. B. Williams Co., Inc.,* 2 Cir., 1974, 498 F.2d 414, 421.

56. Although this issue was not clearly specified in Atlas' excellent brief, we conclude that since it was vigorously urged on oral argument and Atlas filed a motion in the administrative proceedings demanding a jury trial (see note 6, *supra*) it would be overly technical to conclude that the issue was not before us.

57. *Id.*

of Congress to prescribe an administrative, as distinguished from a judicial mechanism. To so hold would produce the absurd spectacle of Congress—having full power to prescribe an administrative structure with sanctions of denial or revocation of a life-or-death license (see the large number of such statutes at note 43, *supra*)—being denied the power to prescribe a money fine of a single dollar or for that matter a single red sou.

### IV. Due Process Issue

■ Atlas objects to the provisions of 29 U.S.C.A. § 659(b) that—in the absence of a challenge by the employer—allows the Secretary's citation and penalty to become the final order of OSHRECOM. The argument is that the employer's affirmative burden to initiate the adversary proceedings violates due process.[58] In support, Atlas cites *Bell v. Burson,* 1971, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90; *Goldberg v. Kelly,* 1973, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Sniadach v. Family Finance Corp.,* 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. But Atlas misunderstands the focus of these decisions. The essence of the *Sniadach* cases is not that the "aggrieved" person had to shoulder the burden of securing a hearing but that the detriment occurred *first* before *any* opportunity for a meaningful hearing was afforded. Thus the question is—are there detriments imposed on employers under

OSHA prior to the timing of the hearing? Arguably, had we accepted Atlas' criminal penalties contention, the Secretary's citation itself could be said to carry criminal stigma but we have rejected that argument. Consequently, the only real detriment to the employer is the monetary penalty which is only imposed after there has been an opportunity to be heard.

### The Deep Freeze How Chilling?

■ Last among its constitutional challenges, Atlas argues that the overall penalty structure of OSHA violates due process because it "chills" the employer's right to seek review of the citation penalty. Arguably, it does this in two ways: First, on review the OSHRECOM has authority to increase the penalty in consideration of such factors as ". . . the good faith or the employer . . ."[59] Thus, the OSHRECOM could theoretically use this power in the same "vindictive" manner forbidden by the Supreme Court in *North Carolina v. Pearce*[60] to punish by penalty increases under the bad faith rubric those employers who exercise their right to review. Second, the possibility that—absent a stay—penalties will cumulate with each violation being considered a separate one for the entire period of the appeal if OSHRECOM finds that an earlier appeal to OSHRECOM or the Court of Appeals was not in good faith or solely for the purposes of

---

**58.** This contention was impliedly rejected in *Yakus v. United States,* 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 where the Supreme Court held that §§ 203 and 204 of the Emergency Price Control Act of 1942, 50 U.S.C.A. App. § 924, that allowed challenges to the validity of regulations to be raised solely by protest to the Administrator and not as a subsequent defense to a criminal prosecution for violation of the regulations. After finding that the procedure allowed sufficient time and opportunity to present evidence the Court restated the basic concept of constitutional waiver:

No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion

of the right before a tribunal having jurisdiction to determine it. *O'Neil v. Vermont,* 144 U.S. 323, 331, 12 S.Ct. 693, 696, 36 L.Ed. 450; *Barbour v. Georgia,* 249 U.S. 454, 460, 39 S.Ct. 316, 317, 63 L.Ed. 704; *Whitney v. California,* 274 U.S. 357, 360, 362, 380, 47 S.Ct. 641, 642, 643, 650, 71 L.Ed. 1095. Courts may for that reason refuse to consider a constitutional objection even though a like objection had previously been sustained in a case in which it was properly taken. *Seaboard Air Line Ry. Co. v. Watson,* 287 U.S. 86, 53 S.Ct. 32, 77 L.Ed. 180, 86 A.L.R. 174.

**59.** 29 U.S.C.A. § 666(i).

**60.** 1969, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656.

delay or avoidance of penalties. 29 U.S.C.A. § 666(d). We do not reach this for Atlas was not penalized by either of these provisions and under no circumstances could we on this record and briefs which represent the finest in quality and content conclude or even sustain a post-affirmance effort by the Secretary to find this appeal to have been ill-founded, even if to the advocate remaining still unconvinced, the effort was unavailing in result. Atlas therefore simply has no standing to challenge these aspects of the statute. *Sierra Club v. Morton,* 1972, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636.

## V. The Administrative Findings

Finally, Atlas challenges the administrative determination that at the time of the accident its roof hole coverings violated either the statute or the regulations. In the alternative Atlas contends: (i) that its means of hole covering complied with the intent of the statute which required that the coverings be ". . . so installed as to prevent accidental displacement";[61] (ii) the findings of the administrative hearing officer were not supported by substantial evidence; or (iii) even if the regulation was violated, no "serious" offense qualifying for civil penalties under 29 U.S.C.A. § 666(b) and (k) actually resulted from the means of hole coverings used.

■ The ALJ determined that the opening covers used by Atlas—two bundles of insulation material of the same type then being laid over the roof by the Atlas employees—did not meet the requirements of the regulation that they be "so installed as to prevent accidental displacement." However, Atlas urges that the regulatory phrase was intended only to encompass an advertent dislodging of the cover—an assertedly unlikely possibility here—but not an inadvertent removal of unsecured insulation by an employee who thought it was merely one of the many bundles of insulation scattered over the solid roof deck. Reading the statute with its safety objectives in mind, we cannot accept any such distinction. The Administrative Agency had ample basis to conclude that Atlas' method of covering the roof openings fits well within the language of the regulation.

It was a jury-rigged system which failed with the price of a human life. We are not, nor would we wish to be, and our own system would suffer if we were, infused with "roofing prescience" to enable us to conclude, as Atlas urges, that the possible confusion by this temporary employee between these hole-covering bundles and those strewn around the roof deck was "accidental."

■ Finally, the result—death—answers fully the contention that there was no "serious violation" of 29 C.F.R. § 1926.500(b)(1) committed resulting in a civil penalty under subds. (b) and (k) of 29 U.S.C.A. § 666. Atlas cites the exception to § 666(k) that excludes from a "serious violation" a situation where the employer "did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." Essentially, this was a question of fact for which the administrative triers had ample basis to conclude that Atlas should have known of the presence of the violation.

Affirmed.

---

61. 29 C.F.R. § 1926.500(f)(5)(ii).