UNDERHILL CONSTRUCTION
CORPORATION, Petitioner,

v.

SECRETARY OF LABOR AND OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondents.

No. 122, Docket 75–4058.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1975.

Decided Nov. 24, 1975.

William J. Pastore, New York City (Sacks, Montgomery, Molineaux & Pastore, New York City, of counsel), for petitioner.

Dennis K. Kade, Atty., U. S. Dept. of Labor, Washington, D. C. (William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for App. Litigation, Allen H. Feldman, Asst. Counsel for App. Litigation, U. S. Dept. of Labor, Washington, D. C., of counsel), for respondents.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Underhill Construction Corporation ("Underhill") petitions this Court for review, pursuant to 29 U.S.C. § 660(a), of a final order, dated January 31, 1975, of the Occupational Safety and Health Review Commission ("Commission"). That order sustained the respondent Secretary of Labor's ("Secretary") citation of the petitioner for a "serious" violation of Section 5(a)(2) of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 654(a)(2). An administrative law judge had initially held that the citation was invalid because the occupational safety and health standards, which were initially promulgated by the Secretary under the Construction Safety Act of 1969 ("CSA"), 40 U.S.C. § 327 et seq.,[1] and which were alleged to have been violated here, were not applicable to construction projects negotiated prior to April 27, 1971. The Commission reversed the administrative law judge and held that when the Secretary adopted the CSA standards as occupational safety and health standards under OSHA, he discarded the exemption of construction projects negotiated prior to April 27, 1971. We agree with the Commission's conclusion and deny the petition for review.

Because this petition involves solely an interpretation of the applicable statutes and regulations, only a brief recitation of the underlying facts and procedural background of the matter is necessary in order to grasp the problem.[2]

Underhill was a concrete subcontractor engaged in the construction of a major, federally assisted apartment complex in New York City. Underhill's subcontract had been entered into on October 1, 1970. The prime contractor, HRH Construction Corp., had entered into its contract with the owner of the proposed complex, Waterside Redevelopment Co., Inc., on December 30, 1970.

On June 14, 1972, an OSHA Compliance Officer, during a routine inspection of the construction site, discovered numerous Underhill employees engaged in the process of stripping concrete forms at the edges of floors eighteen through twenty of a building under construction there. There were no guard rails around the perimeters of the floors, nor were any other means used to protect Underhill's employees against falls.

As a result of the June inspection, the Secretary, on July 18, 1972, issued a citation to Underhill for a "serious" violation of OSHA § 5(a)(2), 29 U.S.C. § 654(a)(2), for permitting its employees to work on open-sided floors of the construction site more than six feet above the ground without the appropriate protection against falling from those floors. The particular safety standard violated is codified in 29 C.F.R. § 1926.500(d)(1). Underhill agrees that if 29 C.F.R. § 1926.500(d)(1) applied to its construction site on June 14, 1972, its failure to provide satisfactory guard rails or other appropriate protection against falls was a violation of OSHA Section 5(a)(2).[3]

Underhill's contention now is that when the Secretary of Labor adopted as part of OSHA the safety and health

---

1. That Act is also more formally known as the Contract Work Hours and Safety Standards Act.

2. Although the administrative law judge did not reach the merits or make factual findings, the Commission, after reviewing the record of the proceedings, made its own findings of fact. Those findings are fully supported by the record, and Underhill does not challenge them in this proceeding.

3. This Court's recent decision in Brennan v. Occupational Safety & Health Rev. Com'n, 513

F.2d 1032 (2 Cir. 1975), in which we upheld a citation against Underhill for a failure to comply, at a different construction site, with the very standard involved in this case, a fortiori mandates the conclusion that Underhill's failure to provide guard rails was a violation here. It should be noted that in the prior proceeding before this Court, Underhill neither briefed nor argued the "effective date" issue before us now.

standards which he had previously promulgated for CSA, he also adopted the effective dates of the CSA standards. Our analysis of that contention begins with the enactment of CSA and the Secretary's promulgation of safety and health standards thereunder.

Section 107(a) of CSA, 40 U.S.C. § 333(a), directs that "it shall be a condition of each contract which is entered into [with the federal government or which is federally assisted] . . . for construction . . ., that no contractor or subcontractor contracting for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety, as determined under construction safety and health standards promulgated by the Secretary by regulation . . . ."

The regulations which that section of CSA contemplated were promulgated on April 17, 1971. 36 Fed.Reg. 7340, 29 C.F.R. Part 1518 (now 29 C.F.R. Part 1926).[4] Part 1926 of Title 29 of the Code of Federal Regulations, the part now containing the CSA safety and health regulations, is divided into subparts designated "A" through "X".[5] The original section 1518.1050 of Part 1518 (now 29 C.F.R. § 1926.1050) provided that the standards would apply only to contracts "for which negotiations are commenced on or after 10 days following [the standards'] publication. . . ." 36 Fed. Reg. 7410.[6]

Eleven days after the publication of the CSA regulations, OSHA became effective, Pub.L. No. 91–596, § 34. Section 3(5) of OSHA, 29 U.S.C. § 652(5), defines the scope of that Act by defining an "employer" as a "person [including corporations, see OSHA § 3(4), 29 U.S.C. § 652(4)] engaged in a business affecting commerce who has employees . . . ." It further requires, in § 5(a)(2), 29 U.S.C. § 654(a)(2), that each employer "shall comply with occupational safety and health standards promulgated under this Act." OSHA also directed the Secretary, as soon as practicable after the effective date of the Act, to "promulgate as an occupational safety or health standard . . . any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health." OSHA § 6(a), 29 U.S.C. § 655(a). That section of the Act further authorized the Secretary to adopt such "established Federal standards" without compliance with the rulemaking provisions of the Administrative Procedure Act. An "established Federal standard" was defined in OSHA § 3(10), 29 U.S.C. § 652(10) as "any operative occupational safety and health standard established by any agency of the United States and presently in effect," while an "occupational safety and health standard" was further defined in OSHA § 3(8), 29 U.S.C. § 652(8), as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or health-

---

**4.** The standards, originally codified in Part 1518 of Title 29 of the Code of Federal Regulations, have been recodified and redesignated Part 1926 of that code. See 36 Fed.Reg. 25232 (Dec. 30, 1971). All references in this opinion to the April 17, 1971 regulations will, for the sake of convenience and unless specifically noted to the contrary, be referred to by the new designation.

**5.** Section 1926.500(d)(1), the specific standard violated by Underhill in the instant case, is codified in Subpart M. Section 1926.1050, the general effective date of the CSA regulations is codified in Subpart X.

**6.** Upon codification, Section 1926.1050 now reads as follows:

"§ 1926.1050 Effective dates (general).

"Except where different effective dates are specifically provided in § 1926.1051, the safety and health standards published in Subparts C through U of this part shall become effective on April 24, 1971, for all Federal and federally assisted advertised contracts subject thereto which are advertised after that date and on April 27, 1971, for all such negotiated contracts for which negotiations begin after that date."

ful employment and places of employment."

Consequently, on May 29, 1971, the Secretary declared the standards previously promulgated under CSA to be "established Federal standards" and promulgated them under OSHA, with a general effective date of August 27, 1971. 36 Fed.Reg. 10466–69.[7] Subsequently, on February 17, 1972, in an attempt to clarify which of the CSA regulations had been adopted under OSHA by the May 29, 1971 promulgation, the Secretary added a new paragraph to the OSHA regulations entitled "Construction Safety Act distinguished." 37 Fed.Reg. 3513.[8] The new regulation noted specifically that Subparts A and B of the CSA regulations were not adopted under OSHA, but that the "standards," also referred to as "substantive rules," contained in "Subpart C and the following subparts [subparts D through X]" of the CSA regulations were adopted. The Secretary's publication of that new regulation indicated his intent to adopt only the CSA substantive rules and to discard under OSHA the CSA provisions which were important only to CSA because of the contractual basis of that earlier act.

Finally, on December 7, 1972, after Underhill's citation had been issued in the instant case, the Secretary published a further clarifying regulation with respect to the incorporation by reference of the CSA standards under OSHA. 37 Fed.Reg. 26008.[9] In that publication, the Secretary re-emphasized that he had not adopted under OSHA any of the interpretive rules in the CSA regulations which had no relevance to OSHA's application.

---

**7.** Section 1910.12(a) of the Code of Federal Regulations was established as follows:

"§ 1910.12 Construction work.

"(a) *Adoption and extension of established safety and health standards for construction.* The standards prescribed by Part [1926] of this title and in effect on April 28, 1971, are adopted as occupational safety or health standards under section 6(a) of the Act and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work. Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed by this paragraph." 36 Fed.Reg. 10469 (emphasis in original).

**8.** Section 1910.12(c) of the Code of Federal Regulations was established as follows:

"(c) *Construction Safety Act distinguished.* This section adopts as occupational safety and health standards under section 6 of the Act the standards which are prescribed in Part 1926 of this chapter. Thus, the standards (substantive rules) published in Subpart C and the following subparts of Part 1926 of this chapter are applied. This section does not incorporate Subparts A and B of Part 1926 of this chapter. Subparts A and B have pertinence only to the application of section 107 of the Contract Work Hours and Safety Standards Act (the Construction Safety Act). For example, the interpretation of the term 'subcontractor' in paragraph (c) of § 1926.13 of this chapter is significant in discerning the coverage of the Construction Safety Act and duties thereunder. However, the term 'subcontractor' has no significance in the application of the Act, which was enacted under the Commerce Clause and which establishes duties for 'employers' which are not dependent for their application upon any contractual relationship with the Federal Government or upon any form of Federal financial assistance." 37 Fed.Reg. 3513 (emphasis in original).

**9.** That publication added Section 1910.11(b) of the Code of Federal Regulations as follows:

"(b) It bears emphasis that only standards (i. e., substantive rules) relating to safety or health are adopted by any incorporations by reference of standards prescribed elsewhere in this chapter or this title. Other materials contained in the referenced parties [sic., parts?] are not adopted. Illustrations of the types of materials which are not adopted are these. The incorporations by reference of Parts 1915, 1916, 1917, 1918 in §§ 1910.13, 1910.14, 1910.15, and 1910.16 are not intended to include the discussion in those parts of the coverage of the Longshoremen's and Harbor Workers' Compensation Act or the penalty provisions of the Act. Similarly, the incorporation by reference of Part 1926 in § 1910.12 is not intended to include references to interpretative rules having relevance to the application of the Construction Safety Act, but having no relevance to the application of the Occupational Safety and Health Act." 37 Fed.Reg. 26008.

Underhill asserts that because the February 17, 1972 OSHA publication, 29 C.F.R. § 1910.12(c), explicitly excluded Subparts A and B and included the standards in Subpart C and the following subparts, *i. e.*, Subparts D through X, of the CSA regulations, 29 C.F.R. Part 1926, the Secretary specifically included the CSA regulations' effective date contained in Subpart X. Its argument, however, neglects the clear and unambiguous language [10] in both OSHA and the regulations under that statute defining the term "standard" and the phrase "established Federal standards." OSHA §§ 3(8) and 3(10), 29 U.S.C. §§ 652(8) and 652(10); 29 C.F.R. §§ 1910.2(f) and 1910.2(h). Those definitions make clear that the Secretary intended to adopt, indeed had the statutory authority to adopt, only those provisions in the CSA regulations which require "conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." The effective date "exemption" of contracts negotiated prior to April 27, 1971, 29 C.F.R. § 1926.1050, cannot, of course, be considered an "established Federal standard" as that phrase is defined. If anything, that section is a partial exclusion which has the opposite intent and effect of a "standard."

Generally, the Secretary adopted under OSHA only *established Federal standards* in effect on April 28, 1971." 36 Fed.Reg. 10468–69; 29 C.F.R. § 1910.-11(a) (emphasis supplied). More specifically, with respect to the construction industry, he adopted "[t]he *standards* prescribed by Part [1926] of this title." 36 Fed.Reg. 10469 (emphasis supplied);

see present 29 C.F.R. § 1910.12(a). Since 29 C.F.R. § 1926.1050, the section containing the CSA effective date, is not a "standard" or an "established Federal standard," it is clear that that section was not adopted by the Secretary under OSHA.

Moreover, in addition to this plain and unambiguous incorporation of only "established Federal standards" and the "standards" contained in Part 1926, the OSHA regulations promulgated on May 29, 1971 contained their own preamble and effective dates, further indicating the Secretary's intention that the incorporated CSA standards did not carry their effective dates with them when incorporated into OSHA. In the preamble to the publication of the OSHA regulations, 36 Fed.Reg. 10466, the Secretary stated that:

"The effective date of the established Federal standards is . . . delayed for 90 days [from May 29, 1971], but only for employers and employments not subject to any of the statutes [including CSA] listed in the preceding paragraph. The purpose of the delay is to insure that affected employers and employees would be informed of the existence of the standards and of their terms, and to give such employers and employees an opportunity to familiarize themselves with the requirements of the standards before their application.

\*　\*　\*　\*　\*　\*

"However, for established Federal standards which correspond to occupational safety and health standards (1) promulgated under any of the statutes [including CSA] listed in the preceding paragraph and (2) applicable to any

---

**10.** Underhill argues that any ambiguity in the statutes' and regulations' applicability must be resolved in its favor because OSHA is a penal or criminal statute in nature. While we find this argument inapposite because there is no ambiguity whatever in the sections of the statute and regulations in question in this case, we note that there is significant authority to the effect that OSHA is not a criminal statute but remedial legislation providing for civil remedies to aid enforcement. *Atlas Roofing Co. v. OSHRC*, 518 F.2d 990 (5 Cir. 1975); *Frank Irey, Jr., Inc. v. Occupational Safety & H. R. Com'n.*, 519 F.2d 1200 (3 Cir. 1974), aff'd en banc, 519 F.2d 1215 (1975); *Beall Const. Co. v. Occupational Safety & H. Rev. Com'n*, 507 F.2d 1041 (8 Cir. 1974). *See OSHA* § 17, 29 U.S.C. § 666.

58

employer and any employment by virtue of any of such statutes, no delay in effective date is provided with respect to such employer and employment. In the case of employers and employments subject to standards issued under such statutes, familiarity already exists.

"An additional delay in effective date until February 15, 1972, is provided and codified in the new Part 1910 in sections within Subparts G, H, I, L, N, O, P, R, and S in situations where additional time is considered necessary to adjust to the new standards."

Manifestly, the Secretary contemplated three possible effective dates for the OSHA standards: (1) immediate—for those employers and employments already subject to standards incorporated from other legislation, (2) August 27, 1971 [11]—for those employers and employees probably unfamiliar with the standards because they had not been subject to those standards in the past, and (3) February 15, 1972—for those areas of employment for which that date was specifically provided in order to "adjust" to the new standards. Nowhere is there any indication in any part of the OSHA regulations that the Secretary contemplated any other effective dates. On the contrary, he correctly recognized that the legislative purpose behind OSHA § 6(a), 29 U.S.C. § 655(a), permitting him to incorporate "established Federal standards" without complying with the Administrative Procedure Act's rulemaking provisions, was to "establish, as rapidly as possible . . . standards with which industries are generally familiar, and on whose adoption interested and affected persons have already had an opportunity to express their views." 29 C.F.R. § 1910.1.

Finally, and perhaps most conclusively, on August 14, 1971, just two weeks before the general OSHA "adopted" standards were scheduled to become effective, the Secretary promulgated a specific effective date for the construction standards adopted by 29 C.F.R. § 1910.-12, the CSA standards in question here. 36 Fed.Reg. 15438. That publication added § 1910.17 to Title 29 of the Code of Federal Regulations in pertinent part as follows:

"§ 1910.17 Effective dates.

"(a) Except as provided in paragraphs (b) and (c) of this section, the standards prescribed in this Subpart B shall be effective on August 27, 1971.

"(b)(1) To the extent that the standards prescribed in § 1910.12 apply to light residential construction or to other *construction work . . . which is not subject to the construction safety standards published in Part [1926] of this title, their application is delayed until September 27, 1971.*

\* \* \* \* \* \*

"(c) Except as provided in paragraph (b) of this section, whenever any employment or place of employment is, or becomes, subject to any safety and health standard prescribed in Part . . . [1926] of this title on a date before August 27, 1971, by virtue of the Construction Safety Act . . ., that occupational safety and health standard as incorporated by reference in this subpart shall also become effective under the Williams-Steiger Occupational Safety and Health Act of 1970 on that date." (emphasis supplied)

The background information which accompanied the publication of that section indicates that it was intended to delay for one month the application of the construction standards prescribed in 29 C.F.R. § 1910.12 as they apply to *any construction . . . activities* which are not subject to the construction safety standards published in 29 CFR Part

11. On August 14, 1971, that date was later delayed another month, to September 27, 1971, for "construction work . . . which is not subject to the construction safety standards published in Part [1926] of this title." 36 Fed. Reg. 15438, adding § 1910.17 to Title 29 of the Code of Federal Regulations. See *infra.*

[1926], but which are subject to the Williams-Steiger Occupational Safety and Health Act of 1970." 36 Fed.Reg. 15438.

It is clear that Underhill was engaged, at the Waterside complex, in construction activities which were subject to OSHA. It is equally clear that its construction activities at Waterside were not subject to the CSA standards because the contract for those activities was negotiated prior to April 27, 1971. The unmistakable dictate of 29 C.F.R. § 1910.17 is that the OSHA standards became effective at the Waterside complex on September 27, 1971, at least nine months prior to the Secretary's citation of Underhill.

Consequently, the Commission's affirmance of the Secretary's citation was correct and Underhill's petition for review is denied.